UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARLY S.,[1]

                                    Plaintiff,            Case # 21-CV-00335-FPG

v.                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

## INTRODUCTION

On October 3, 2018, Carly S., ("Plaintiff") protectively applied for Supplemental Security Income under Title XVI of the Social Security Act (the "Act"). Tr.[2] 15. The Social Security Administration (the "SSA") denied her claim and Plaintiff appeared at a hearing before Administrative Law Judge Mark Solomon (the "ALJ") on July 10, 2020. *Id*. At the hearing, Plaintiff appeared and testified by telephone. *Id*. Plaintiff's attorney and an impartial vocational expert appeared and testified. *Id*. On August 5, 2020, the ALJ issued an unfavorable decision. Tr. 27. On January 12, 2021, the Appeals Council denied review. Tr. 1. On March 3, 2021, Plaintiff appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 10. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the judgment of the SSA is AFFIRMED.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

## LEGAL STANDARD

### I.      District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.     Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

2

**DISCUSSION**

I.    **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step

one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 3,

2018, the alleged onset date.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following

severe impairments: "lumbar degenerative disc disease, asthma, cannabis use disorder, severe, and

alcohol use disorder, moderate, borderline personality disorder, unspecified bipolar and related

disorder with psychotic features, and generalized anxiety disorder."  Tr. 17; *see also* 20 CFR §

416.920(c).  In addition, the ALJ noted that Plaintiff had been diagnosed with Crohn's disease and

fibromyalgia, but found the conditions nonsevere.  Tr. 18.  At step three, the ALJ found that

Plaintiff does not have an impairment or combination of impairments that meet or medically equal

the severity of one of the listed impairments.  Tr. 19.

Next, the ALJ determined that Plaintiff maintained the RFC to perform light work as

defined in 20 C.F.R. § 416.967(b), with specific exertional limitations, Tr. 20, namely that claimant

"can sit, stand and walk for 6 hours in a workday with normal work breaks … can lift and carry

20 pounds occasionally and 10 pounds frequently; occasionally climb, balance, stoop, kneel,

crouch, and crawl … must avoid working at unprotected heights and with hazardous heavy-duty

machinery; and avoid concentrated exposure to respiratory irritants, and weather extremes."  Tr.

20.  In addition, claimant "can remember, understand and carry out simple instructions, make

simple work-related decisions, and maintain attention and concentration for rote work … can adapt

to routine changes in work place, can have routine interaction with supervisors and coworkers and perform a job with brief and superficial contact with the general public." *Id*.

At steps four and five, the ALJ concluded that there were substantial jobs that existed in the national economy that Plaintiff could perform, such as "marker," "housekeeper," and "assembler." Tr. 26. As such, the ALJ found that Plaintiff was not disabled from her alleged onset date, October 3, 2018, through the date of the ALJ's decision, August 5, 2020. Tr. 27.

**II.   Analysis**

Plaintiff argues that reversal or remand is required because the ALJ "failed to adequately consider the limitations stemming from [Plaintiff's] Crohn's and Fibromyalgia disease." ECF No. 8-1 at 3. Specifically, Plaintiff argues that the ALJ erred by not finding these conditions "severe" and not including "additional restroom breaks in the RFC determination." *Id*. at 4. The Commissioner contends that the ALJ properly determined that the conditions were nonsevere and the incorporation of additional limitations in the RFC determination, such as bathroom breaks, was not warranted. *See* ECF No. 10-1. For the reasons below, the Court concludes that Plaintiff's claims are without merit and the judgment of the SSA is affirmed.

At step two of the disability analysis, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 416.920(a). A "severe impairment" is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id*. at § 416.920(c). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs." *Id*. at § 416.920(c). It is the claimant's burden to present evidence that establishes the severity of his impairment. *Id*. at § 416.920. The claimant must demonstrate "that the impairment has caused functional limitations that precluded him from engaging in any substantial gainful activity for one year or more." *Perez v. Astrue*, 907 F. Supp.

4

2d 266, 272 (N.D.N.Y. 2012) (citing *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) (summary order) and *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).  A finding of "nonsevere" should be made if the medical evidence establishes only a slight abnormality that would have no more than a minimal effect on an individual's ability to work.  *Id*. at 271; *see also* S.S.R. 85-28, 1985 WL 56858, at *3 (S.S.A. Jan. 1, 1985).

"An error at step two—either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe—can be harmless error if the ALJ continues the analysis and considers all impairments in [his] RFC determination." *Sech v. Comm'r of Soc. Sec.*, No. 7:13-CV-1356, 2015 WL 1447125, at *3 (N.D.N.Y. Mar. 30, 2015); *see* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' … when we assess your [RFC].").  Remand is required if the ALJ fails to account for the claimant's nonsevere impairments when determining the RFC.  *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) ("[A]fter finding that [the claimant]'s mental impairment of depression does not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere, … the ALJ determined [the claimant]'s RFC without accounting for any of the limitations arising from her mental impairment[.] Thus, the ALJ committed legal error."); *Schmidt v. Colvin*, No. 15-CV-2692, 2016 WL 4435218, at *13 (E.D.N.Y. Aug. 19, 2016) ("Where an ALJ fails to account for any functional limitations associated with the [non-severe] impairments in determining the claimant's RFC, a court must remand for further administrative proceedings." (quotation marks and citations omitted)).

The ALJ found at step two that Plaintiff's Crohn's disease and fibromyalgia were nonsevere impairments.  Tr. 17-18.  The ALJ noted that while medical evidence demonstrated that Plaintiff was diagnosed with Crohn's disease and fibromyalgia, "the evidence does not demonstrate that said impairments cause more than a minimal impact on [Plaintiff's] ability to perform basic work activity."  Tr. 18.

Even if the ALJ improperly classified such impairments as nonsevere, such an error is generally "harmless error if the ALJ continues the analysis and considers all impairments in [his] RFC determination."  *Sech*, 2015 WL 1447125, at *3 (N.D.N.Y. Mar. 30, 2015).  As discussed, remand is required if the ALJ fails to account for the claimant's nonsevere impairments when determining his RFC.  *See Parker-Grose*, 462 F. App'x at 18.  Here, the record shows that the ALJ properly considered Plaintiff's nonsevere impairments when determining Plaintiff's RFC.  Despite Plaintiff's claims to the contrary, the ALJ did not fail to account for the "limitations imposed by Plaintiff's non-severe [ ] impairments."  *Schmidt*, 2016 WL 4435218, at *13.  The ALJ began his RFC assessment by noting "[a]ll of claimant's impairments, both severe and non-severe, have been adequately considered and all medically supported restrictions have been accommodated for in the decision's residual functional capacity assessment[,]" before providing a detailed RFC determination that properly addressed Plaintiff's nonsevere impairments.

**A.  Crohn's Disease**

Specifically, with respect to Plaintiff's Crohn's disease diagnosis, the ALJ explicitly discussed Plaintiff's testimony that she was "unable to start her day until 10 or 11 because of constant defecation due to Crohn's disease[,]" but noted that such claims of constancy were inconsistent with her testimony that she performed tasks and transported her children to school every morning.  Tr. 21.  In addition, the ALJ noted that Plaintiff's anxiety "contributes to Crohn's

flare-ups[.]"  *Id*.  Further, the ALJ found unpersuasive, when determining Plaintiff's RFC, a consultative examiner's opinion that "claimant may require frequent restroom breaks and intervals at times due to Crohn's disease [and] there may be mild limitations for heavy lifting, carrying due to Crohn's disease" because it was inconsistent with the medical evidence. Tr. 25.  Thus, even if the ALJ erred in finding Plaintiff's alleged Crohn's disease diagnosis nonsevere, the Court concludes that the ALJ properly "continued the sequential analysis and considered Plaintiff's nonsevere impairments in his RFC determination."  *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. May 2, 2013) (summary order) (finding errors at step two are harmless as long as the ALJ continues with the sequential analysis); *O'Connell v. Colvin*, 558 F. App'x 63, 64 (2d Cir. 2014) (summary order); *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. Mar. 24, 2010) (summary order) (same).

Plaintiff additionally contends that the ALJ erred when he failed to incorporate additional bathroom breaks into Plaintiff's RFC determination. ECF No. 8-1 at 8.  The Commissioner argues that the ALJ reasonably concluded that additional bathroom breaks were not warranted because Plaintiff's testimony that she required such breaks was not supported medical evidence of record. ECF No. 10-1 at 12.  For the reasons below, the Court agrees with the Commissioner.

A claimant's RFC reflects what he or she "can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818, 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012).  To make the RFC determination, "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id*. (citation omitted); *see also* 20 C.F.R. § 416.945(a).  The ALJ assesses RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). When determining a claimant's RFC, the ALJ is required to take the claimant's testimony as to

limitations into account, "but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted).

Here, the ALJ reasonably concluded that including additional bathroom breaks of the frequency claimed was not warranted because Plaintiff's testimony that she required such breaks was not supported by other medical evidence of record. At the outset of his discussion of Plaintiff's RFC, the ALJ concluded that Plaintiff required "normal work breaks." Tr. 20. In formulating Plaintiff's RFC, the ALJ considered Plaintiff's complaints and testimony that she suffered from "constant defecation due to Crohn's disease" each morning. Tr. 21. In addition, the ALJ noted that the opinion of a consultative examiner suggested that "there may be mild limitations for heavy lifting, carrying due to Crohn's disease[,]" which the ALJ found persuasive as to physical limits. Tr. 25. The consultative examiner also opined that Plaintiff "*may* require frequent restroom breaks and intervals at times due to Crohn's disease[,]" which the ALJ found "vague and speculative" because the frequency of such breaks "was not documented in treatment records." *Id*. (emphasis added). No other medical opinion in the treatment records suggests a bathroom-break limitation or contains such a diagnosis. In addition, the ALJ noted that the consultative examiner's diagnosis was provided in 2015 and Plaintiff did not receive or seek treatment for the condition for approximately five years after this diagnosis. *Id*.

While the ALJ noted that there was an absence of evidence to support Plaintiff's testimony, the ALJ also properly determined that the testimony was inconsistent with other medical evidence of record. The ALJ reasonably concluded that the totality of the objective medical evidence did not support the claimed requirement of frequent access to a bathroom due to symptoms of Crohn's

disease. Rather, the medical evidence of record supported a finding that Plaintiff's gastrointestinal conditions were controlled or managed during the relevant period, despite the five-year gap in treatment the ALJ discussed. While early treatment records reflected epigastric and abdominal tenderness (mild to moderate), cramping, and diarrhea, the ALJ found that objective clinical findings showed normal abdomen, positive bowel sounds in all quadrants with no distention, muscle guarding, rebound tenderness, palpable masses or rigidity. Tr. 322, 371, 383, 391, 475, 484, 487, 665, 668, 1209, 1218, 1225, 1236, 1375, 1383. The ALJ also noted that previous diagnostic studies showed no evidence of bowel obstruction. Tr. 1330, 1349. In addition, the ALJ observed that Plaintiff often denied dysuria, incontinence or bowel incontinence during examinations. *See e.gs*. Tr. 675, 1246, 1248, 1255, 1268.

In sum, despite the consultative examiner's opinion, the Court concludes that the ALJ properly found that the medical evidence of record did not support Plaintiff's statements regarding a need for frequent bathroom visits. *See Breyette v. Comm'r of Soc. Sec.*, No. 8:13-CV-366 (GLS), 2014 WL 2533162, at *3 (N.D.N.Y. June 5, 2014) (finding that the ALJ did not err when he did not account for frequent bathroom breaks in the RFC, since "the medical record evidence simply [did] not support or corroborate [the plaintiff's] statements regarding the frequency, duration, or predictability of her bathroom visits"). The ALJ did not err when determining Plaintiff's RFC with respect to Plaintiff's Crohn's disease.

### B. Fibromyalgia

Plaintiff contends that the ALJ erred in finding her alleged fibromyalgia nonsevere and failed to consider her fibromyalgia in his RFC determination. For the reasons below, the Court concludes that the ALJ did not err in finding this impairment nonsevere and properly considered the impairment in determining Plaintiff's RFC.

When determining the severity of Plaintiff's medically determinable impairments, the ALJ stated that Plaintiff "has been diagnosed with fibromyalgia, which was not well documented in the record" and "[t]reatment records noted the diagnosis, but claimant's physical ad [sic] neurological exams were within normal limits." Tr. 18. The ALJ also noted that "[w]hile 6 trigger points were noted at a one-time consultative examination [,] treatment records do not have any other indicia of fibromyalgia." *Id*. The ALJ thus concluded that the impairment was "nonsevere, as the evidence does not demonstrate that said impairment[] cause[s] more than a minimal impact on claimant's ability to perform basis work activity." *Id*.

"Fibromyalgia does not always result in objective findings or diagnostic tests." *Mnich v. Colvin*, No. 5:14-CV-740, 2015 WL 7769236, *19 (N.D.N.Y. Sept. 8, 2015). As a general matter, however, "a mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Clasen v. Colvin*, No. 3:13-CV-1390 (GLS/ESH), 2015 WL 1312548, at *3 (Mar. 24, 2015) (citing *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir.2008) (summary order)). When fibromyalgia is established as a medically determinable impairment, "longitudinal records reflecting ongoing evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment […]. For a person with [fibromyalgia], [the SSA] will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id*. (quoting S.S.R. 12–2p, 2012 WL 3104869, at *3).

While fibromyalgia is "a condition that does not necessarily lend itself to diagnostic testing[,]" the Court cannot conclude that the ALJ erred in his determination that Plaintiff's alleged condition was nonsevere. *Mnich*, 2015 WL 7769236, at *17. The medical evidence of record showed that, beyond Plaintiff's initial diagnosis, only one consultative exam yielded results that

provided any indicia of fibromyalgia.  Tr. 18.  Indeed, Plaintiff's physical and neurological exams appeared to be within normal limits.  *Id*.  Moreover, Plaintiff did not receive longitudinal treatment for the alleged condition such that the ALJ may have rendered a different determination.  *See, e.g. Clasen*, 2015 WL 1312548, at *19.  For these reasons, the Court concludes that "substantial evidence" supports the ALJ's determination that Plaintiff's alleged fibromyalgia was nonsevere. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

Next, Plaintiff contends that the ALJ erred by not considered her alleged fibromyalgia in determining her RFC.  Contrary to Plaintiff's argument, the ALJ, in his RFC determination, discussed Plaintiff's reports during a consultative exam that "her thoracolumbar pain started with the fibromyalgia" and observed that Plaintiff testified at her hearing that she "is not treating for fibromyalgia." Tr. 25.  While the ALJ may not have substantially engaged with Plaintiff's alleged symptoms when determining Plaintiff's RFC, "it is clear that the ALJ *considered* the claimant's [impairments] and their effect on [her] ability to work during the balance of the sequential evaluation process."  *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) (emphasis added).  For these reasons, the Court finds that the ALJ did err when determining Plaintiff's RFC with respect to her alleged fibromyalgia.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 8, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 10, is GRANTED, and the judgment of the SSA is AFFIRMED.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 5, 2023
          Rochester, New York

11

_____

HON. FRANK P. GERACI, JR.
United States District Court
Western District of New York